340

BLUFF CITY BEVERAGE COMPANY

*v.*

ALFRED T. MACFARLAND, Commissioner of Revenue.

(*Nashville,* December Term, 1960.)

Opinion filed April 5, 1961.

GERBER & GERBER, MONTEDONICO, BOONE, GILLILAND, HEISKELL & LOCH, Memphis, for appellant.

HENRY C. FOUTCH, Assistant Attorney General, for appellee.

Mr. Chief Justice Prewitt delivered the opinion of the Court.

This is a proceeding to revoke the license of the Bluff City Beverage Company in Memphis.

The case was heard before the Commissioner on a stipulation of facts and the Commissioner ordered revocation of the license of the Beverage Company.

The appellant, Beverage Company, is a wholesale liquor dealer in Memphis. The case was taken to the Circuit Court of Davidson County by certiorari and the Circuit Judge found that there was material evidence to support the findings of the Commissioner and that there was no basis upon which the court concluded that the action was arbitrary, oppressive or unlawful. The case is now before us for review.

The appellant has been licensed as a wholesale liquor dealer in the State for the past several years. It appears that Mr. B. F. Mayer, Sr. owns fifty percent of the stock

and is an executive officer of said corporation. That on July 31, 1958, he issued his personal check in the amount of $20,000 payable to his sister, Mrs. C. E. Byrne, and received a note signed by his sister in the amount of $20,000, the said note being dated August 1, 1958.

Thereafter the said $20,000 note was paid by the Parkside Liquor Store by check issued to Mrs. Clarence Byrne on April 6, 1959, and said check was endorsed and deposited by B. F. Mayer, Sr. in his personal bank account on April 8, 1959.

According to the testimony of Mrs. Byrne, she borrowed this money from her brother, Mayer, Sr., for the purpose of lending it to her nephew and the son of Mayer, Sr., in order for Mayer, Jr. to buy an interest in the Parkside Liquor Store. At the time Mayer, Jr., secured the money from his aunt, Mrs. Byrne, he, Mayer, Jr., already was in the retail liquor business in Memphis, being a partner in the Frosty Liquor Store located on Madison Avenue in Memphis since 1956. According to the testimony of Mrs. Byrne, she did not know that her nephew was in the retail liquor business in Memphis but was in the contracting business.

The record further reveals that on or about April, 1959, Mayer, Sr., was approached by Mr. Edilo Bellanti, doing business as Bellanti's Liquor Store, 625 Union Avenue, Memphis, for the jurpose of making a loan to Mr. Bellanti. Mr. Mayer, Sr. advised Mr. Bellanti that he could not make the loan direct to him but that he could arrange the loan through his sister, Mrs. Byrne, and that Mr. Mayer, Sr., made all the necessary arrangements in connection with said loan and on the 4th day of April, 1959, a loan in the amount of $10,500 was made to Bel-

lanti's Liquor Store. That on the 5th day of April, 1959, Mayer, Sr. issued his check in the amount of $10,500, said check being payable to Mrs. Elizabeth Byrne, she being the one and same person as Mrs. C. E. Byrne. This check was endorsed by Herbert Mayer, a brother of Mrs. Byrne and B. F. Mayer, Sr., and said check delivered to Mr. Bellanti.

None of the transactions in the Bellanti loan were actually handled by Mrs. Byrne other than her name was used by her brother, Mayer, Sr., in making said loan; none of the payments were made by Mr. Bellanti to Mrs. Byrne, but all of the payments on said note were received by Mr. Herbert Mayer and the money received in the payments of the loan was deposited in the bank account of B. F. Mayer, Sr.

According to the evidence the only actual transaction in which Mrs. Byrne participated with reference to the Bellanti loan was that she was paid the interest in the amount of $210 by Mr. Bellanti in cash. Her brother B. F. Mayer, Sr., and Herbert Mayer, handled all other transactions involved in connection with said loan.

There is a statement in the record that the Bellanti loan was made to be used by Bellanti in building some houses at Brownsville, Tennessee. However, the record shows and according to the stipulation filed in the Bellanti case, Bellanti endorsed the $10,500 check which he received as a loan over to the Bluff City Beverage Company, as payment on his account for merchandise which he had purchased from the Beverage Company.

The record further shows that unless this account had been paid at that time, Bellanti would have been on the delinquent list with the Beverage Company.

In addition thereto, the record discloses that Bellanti did not acquire the property at Brownsville until the latter part of August, 1959, at which time the money used to purchase the property was funds which Bellanti took from his business as a licensed retail liquor dealer.

The record, in this matter, consists of proof and evidence offered by the State by virtue of an investigation carried on by the Department of Revenue pertaining to the operation of the licensee as a wholesale liquor dealer in Memphis, with the exception, of the stipulation filed by counsel.

The testimony included in the transcript of the hearing in connection with the Parkside Liquor Store stands uncontradicted, and the licensee has failed and refused to offer any testimony or explanation concerning any of the financial transactions which were made with the two licensed retail liquor stores. No reason or explanation is offered in the record by the licensee as to its failure or refusal to explain any of said transactions and no denial has been made of either of said transactions by the particular person who made both loan transactions.

The record shows that there has been a clear violation of the provisions of the local option liquor act by the licensee in that the provisions of Section 57-109, subsection (3) (b) T.C.A., have been violated in that the licensee falsified by fraud and false swearing its application for the issuance of a wholesale liquor dealer's license for the year 1959, in that the licensee did not reveal certain material facts and circumstances relating to the operation and management of the business for which it was licensed as a wholesale liquor dealer in Memphis.

■ The evidence further shows that the loans made by Mayer, Sr., were in direct violation of Section 57-116, T.C.A. and the pertinent part of said Section being as follows:

"No person owning stock in such corporation shall have any interest as partner or otherwise is a business licensed to engage in the retail sale of intoxicating liquors in Tennessee."

The record likewise shows that Mayer, Sr., being fifty percent owner of the Beverage Company, knew of his own knowledge, that as a licensed wholesaler he could not, under the provisions of the local option liquor act, have any interest either directly or indirectly in any licensed retail store and the making of any such loans was in direct violation of Section 57-123, subsections (5) and (6), T.C.A.

Likewise the record reveals that all of the said violations were in direct conflict with Rules and Regulations Nos. 4, 15 and 28, as promulgated under the provisions of the local option liquor act of the State of Tennessee.

It is insisted by appellant that the Commissioner had no authority to promulgate Rules and Regulations Nos. 4, 15 and 28, under the provisions of the local option liquor act.

Under the facts in this case, we do not think it is necessary to pass upon the question of whether the Commissioner had the authority to promulgate the rule making it a violation when the loan was made by appellant to a retail liquor dealer.

The statute prohibits such dealer from owning a proprietary interest in a retail liquor store. However, under

the above facts, we think it is fairly deducible that appellant did have a proprietary interest in the liquor store and therefore violated the statute, and that there is material evidence to support the findings of the Commissioner and the lower court.

It results that the judgment of the lower court is affirmed.